## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**RICKY R. ANDERSON**                                                    **PETITIONER**

**VS.**                         **CASE NO. 5:15CV00380 BSM/PSH**

**WENDY KELLEY, Director of the**
**Arkansas Department of Correction**                              **RESPONDENT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Brian S. Miller .  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Ricky R. Anderson ("Anderson") seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. He is currently in the custody of the Arkansas Department of Correction (ADC) following a 2010 jury trial in the Circuit Court of Washington County on the charge of capital murder.  He was sentenced to life imprisonment.  On direct appeal, Anderson contended the trial court erred five ways: (1) denying his motion for a directed verdict; (2) giving a jury instruction which shifted the prosecution's burden of proof to the defendant; (3) allowing testimony that the victim was pregnant; (4) allowing photographs of the crime scene; and (5) denying his motion to suppress custodial

statements he made prior to being given a *Miranda* warning.  The direct appeal was unsuccessful. *Anderson v. State*, 2011 Ark. 461.  The Arkansas Supreme Court did not reach the merits of all of Anderson's claims, finding he failed to preserve his claim that the jury instruction on causation unconstitutionally shifted the burden of proof to him.

Anderson subsequently sought Rule 37 relief, filing a December 2011 petition with the trial court alleging numerous instances of ineffective assistance of counsel and one challenge to the jury instruction on causation.  Docket entry no. 10-5, pages 12-21.  Following a July 2012 evidentiary hearing, the trial court denied the Rule 37 petition in October 2012.  Docket entry no. 10-5, pages 76-79.  A timely appeal did not ensue.  However, Anderson sought a belated appeal in May 2013, and the Supreme Court of Arkansas granted this request.  The Arkansas Supreme Court ultimately affirmed the Rule 37 trial court decision in January 2015.  Docket entry no. 10-13.  Anderson filed a motion for reconsideration, which was denied on April 30, 2015.  Docket entry nos. 10-14 and 10-16.

Anderson, in his federal habeas corpus petition, claims:

(1) the jury instruction on causation unconstitutionally shifted the state's burden of proof;

(2) the state committed a *Brady* violation by failing to disclose the clothes Anderson was wearing at the time of the murder;

(3) Anderson's counsel was ineffective for failing to introduce the clothing he was wearing at the time of the murder;

(4) there was insufficient evidence to prove Anderson caused the victim's death;

(5) Anderson's counsel was ineffective for objecting to the causation jury instruction for the wrong reason, and thus not preserving the argument for appeal;

(6) Anderson's counsel was ineffective for failing to adequately investigate mitigating factors and preparing for the trial's penalty phase;

(7) Anderson's counsel was ineffective for failing to submit for testing two knives found at the scene; and

(8) Anderson's counsel was ineffective for failing to adequately investigate and prepare for the trial's guilt phase.

**Procedural Default:**    Respondent Wendy Kelley ("Kelley") contends claims 1, 2, and 3 are not properly before this Court due to Anderson's failure to adequately raise these claims in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny.  By previous Order Anderson was notified that claims 1, 2, and 3 were possibly procedurally barred, and he was directed to address this argument.  Anderson has submitted a response to the Court's Order, as well as a "rebuttal" to Kelley's position.  Docket entries no. 12 & 14.  We first consider whether grounds 1, 2, and 3 are properly before the Court.

In *Wainwright v. Sykes, supra*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court, that is, if he was aware of the ground, but failed to pursue it to a final determination.  An exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure.  *See, also, Clark v. Wood*, 823 F.2d l24l, l250-5l (8th Cir. l987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. l987).  The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (l986), and *Murray v. Carrier*, 477 U.S. 478 (l986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause."  *Smith v. Murray*, 477 U.S. 533-34.  However, one can discern from these cases several circumstances in which cause might be found:  first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. l (l984); or third, if the litigant failed to receive the effective assistance of counsel.  *See Murray v. Carrier*, 477 U.S. at 488.  In addition, there is one

3

extraordinary circumstance where a federal habeas court may grant relief without a showing of cause:  where a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.* at 496.

Anderson, in both his responsive pleadings, points to *Martinez v. Ryan*, 566 U.S. —, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), to excuse his procedural default of claims 1, 2, and 3.  The *Martinez* case held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Here, Anderson appears to fall under the umbrella of *Martinez*[1], as he did not have counsel at his Rule 37 proceeding, and we will assume for present purposes that his claim of ineffective assistance of trial counsel is substantial as that term is used in *Martinez*.

The reach of *Martinez* is limited, however, by the nature of claims 1, 2, and 3.  Only claim 3 is an assertion of ineffective assistance of trial counsel.  A number of cases stand for the proposition that ineffective assistance of postconviction counsel can *only* serve as cause for the procedural default of a claim of ineffective assistance of trial counsel and cannot serve as cause for the procedural default of other claims.  *See, e.g., Dansby v. Hobbs*, 766 F.3d 809 (8th Cir. 2014), *cert. denied sub nom*, *Dansby v. Kelley*, 2015 WL 5774557 (U.S.S.Ct. October 5, 2015) (ineffective assistance of counsel cannot serve as cause for the procedural default of a claim of ineffective assistance of appellate counsel); *Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* does not permit resuscitation of a procedurally defaulted *Brady* claim); and *Young v. Colson*, 2015 WL 4879117 (M.D. Tenn. 2015) (*Martinez* only allows for ineffective assistance of postconviction counsel to establish cause for the default of claims of ineffective assistance of trial counsel; petitioner's claims of, *inter alia*, conflict of interest, double jeopardy, erroneous jury instructions,

---

[1]The *Trevino* case confirmed that *Martinez*, though self-described as a "narrow exception," applied beyond petitioners convicted in Arizona if a state procedure appeared to allow a petitioner to raise ineffective assistance of counsel claims on direct appeal but the structure and design of the system made it virtually impossible to actually pursue such a claim.  132 S.Ct. at 1315.

and juror misconduct are claims not arising from alleged ineffective assistance of trial counsel and are therefore outside the scope of *Martinez*).

Liberally construing Anderson's pleadings, we find that *Martinez* provides a path to our consideration of the merits of claim 3. However, *Martinez* does not rescue claims 1 and 2, which were admittedly not fully pursued in state court postconviction proceedings. Anderson demonstrates no other reason why these claims are not subject to procedural default. We recommend these claims be dismissed on that basis, and turn to the merits of claims 3-8, starting with Anderson's fourth claim for relief.

*Claim 4 – Insufficient evidence to prove Anderson caused the victim's death:* It is helpful to consider this claim first, since an overview of the evidence will provide a backdrop for the discussion of the subsequent claims of ineffective assistance of counsel. The Supreme Court of Arkansas considered the evidence and its sufficiency, as follows:

> The following facts are adduced from the testimony and evidence presented at trial. On the evening of June 26, 2009, Kay Ulmer had dinner with her daughter, Jill Ulmer. At about 5:00 p.m. that day, Anderson called Kay and told her that he was in Oklahoma City and on his way to a hospital because he had overdosed. Jill and Anderson had previously shared the Fayetteville apartment where Jill continued to live. At 10:32 p.m., Jill placed a 911 call and reported to the dispatcher that Anderson was in her apartment parking lot and that she had a protection order against him. The dispatcher remained on the line with Jill while officers were dispatched to the apartment. The call ended with a scream. The dispatcher called back Jill's number twice, but no one answered.
>
> Officer Kenneth Willyard and Corporal Chris Scherrey were the first two police officers to arrive at the scene. From the parking lot, Willyard heard a scream and then saw an apartment door slam shut. Willyard and Scherrey raced up the stairs to the apartment. Both Willyard and Scherrey tried to kick in the apartment door; Scherrey also attempted to open the door with his shoulder. Neither of the officers was able to open the door. Very loud screaming continued to come from inside the apartment. Willyard kicked the glass out of a window near the door and moved curtains and blinds out of the way so he could see inside the apartment. Willyard saw Anderson squatting or kneeling behind a couch, with only his head visible above the back of the couch. Willyard testified that Anderson appeared to be fighting with a woman. Scherrey pulled out his Taser and shot, aiming at Anderson's shoulder. Willyard had also pulled out his Taser and pointed it at Anderson when he saw Anderson raise a knife in his right hand and bring it down forcefully. Willyard then dropped his Taser, yelled "knife," drew his pistol, and fired. He said that he could not get a good shot at Anderson because he could see only a small portion of Anderson's head above the couch. Willyard testified that Anderson continued to make stabbing motions, while the woman continued to scream, so he decided to aim his pistol at the area of the

couch where he believed Anderson to be. Scherrey testified that he also fired his pistol at Anderson and aimed at Anderson's shoulder and head. After several shots were fired, the screaming stopped. Scherrey cleared glass from the window, crawled into the apartment, and opened the front door for Willyard. Willyard walked toward the couch and saw a woman, later identified as Jill Ulmer, lying on the floor. Anderson was taken into custody, handcuffed, and walked out of the apartment. Willyard checked on Jill and was unable to find a pulse.

Anderson contends that the circuit court erred in denying his motion for directed verdict because the State failed to present sufficient evidence to support a conviction for capital murder. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. E.g., *Camp v. State*, 2011 Ark. 155, 381 S.W.3d 11. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* "A person commits capital murder if [w]ith premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2007).

At trial, Dr. Adam Craig, an associate medical examiner with the Arkansas State Crime Lab, testified that during the autopsy he performed, he found 27 stab wounds to Jill's body and a gunshot wound to her head. Among the wounds Jill suffered was a cut to her common iliac artery and vein. Dr. Craig testified that the common iliac artery is a "high pressure blood vessel" that squirts blood when cut. Dr. Craig explained that the vessel comes directly off of the aorta and that it bleeds "really quickly" when cut. He testified that, because the vessel is so deep in the abdominal cavity, medical personnel and a surgical team would be required to open the abdomen and repair the cut. According to Dr. Craig, it would be "impossible" to treat the cut "in the field." Further, he stated that, in his opinion, a person with a cut common iliac artery would survive "probably less than five minutes" unless a surgical team was present to provide treatment. On cross-examination, he testified that it would be "stretching it" to say that it was possible that someone suffering from a cut common iliac artery could live for ten minutes. Dr. Craig also testified that doing things such as changing the position of Jill's body or using anti-shock trousers would have had little effect on stopping the bleeding. He stated that, even if someone trained in treating abdominal wounds had been present at the crime scene, Jill would not have survived without surgery. Dr. Craig testified that, while Jill's death was caused by a gunshot wound to the head, it was his opinion that Jill would have also died as a result of the wound to her common iliac artery.

Anderson states that the immediate cause of Jill's death was a bullet that was fired by a police officer. He contends that the State failed to present substantial evidence to compel the conclusion that his conduct was clearly sufficient to cause the death of Jill, as is required by Arkansas Code Annotated section 5–2–205 (Repl.2006). He claims that the jury had to speculate as to what would have happened had a bullet not struck Jill in the head and killed her.

Our law is well settled that, where there are concurrent causes of death, conduct which hastens or contributes to a person's death is a cause of death. *E.g., Jefferson v. State,* 372 Ark. 307, 276 S.W.3d 214 (2008). Causation may be found when the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless the concurrent

cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient to produce the result. Ark.Code Ann. § 5–2–205.

In this case, Anderson's stabbing of Jill brought about the officers' use of deadly force that killed Jill. Had Anderson not been stabbing Jill, the officers would not have attempted to end Anderson's attack on Jill by using deadly force. The concurrent cause—the gunshot wound—was clearly sufficient to cause Jill's death, but Anderson's conduct—stabbing Jill—was not clearly insufficient to cause Jill's death. Dr. Craig testified that it was his belief that Jill would not have survived the wound to her common iliac artery. He testified that he formed his opinion based on his medical knowledge regarding the volume of blood in the body, the typical blood pressure in the arteries and veins, and other cases "where similar arteries had been cut and they knew how long it took them to bleed to death."

Ultimately, the resolution of Anderson's causation challenge rests on the credibility of Dr. Craig's testimony that Jill would have died from the wound to her common iliac artery. The weight given to the evidence, even expert testimony, is a matter for the jury. *E.g., Jackson v. State,* 2009 Ark. 336, 321 S.W.3d 260. It was for the jury to determine whether, as Dr. Craig testified, Jill would not have survived the cut to her common iliac artery. *See, e.g., Windsor v. State,* 338 Ark. 649, 1 S.W.3d 20 (1999) (stating that where the medical examiner testifies that any of multiple injuries alone could have caused the victim's death, it was for the jury to decide the cause of the victim's death). The circuit court did not err in denying Anderson's motion for directed verdict.

*Anderson v. State*, 2011 Ark. 461, 2-6.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Here, Anderson does not plead or prove that the Arkansas court ruling on the  sufficiency of the evidence was contrary to, or involved an unreasonable application of, clearly established federal law. Although the state Supreme Court did not specifically cite federal law, that failure is not problematic as neither the court's reasoning nor result contradicts federal law.  *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005).  The applicable federal law requires the court to ask if,  "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) [emphasis in original].  The Arkansas Supreme Court's

ruling on sufficiency of the evidence is consistent with, and a reasonable application of the *Jackson v. Virginia* standard.

Anderson has also not shown that the adjudication of the claim by the Arkansas Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The record establishes ample evidence of Anderson's guilt, and the recitation of the facts and the application of Arkansas law regarding causation is thorough. Having reviewed the trial record, we find the evidence meets and exceeds the requirements of *Jackson v. Virginia*. There is no merit in Anderson's challenge to the sufficiency of the evidence.

*Claim 3 – Ineffective Assistance of Trial Counsel for Failure to Introduce Anderson's clothing:* As previously noted, this claim was not fully raised in state court. In his Rule 37 trial court proceedings, Anderson testified on this issue and elicited testimony from one of his trial attorneys. The trial judge addressed the claim in his Order, finding Anderson's trial counsel elected not to introduce his clothing at trial, and concluding this decision was "based on trial strategy." Docket entry no. 10-5, pages 77-78. Anderson did not appeal the trial court's ruling on this issue, although the Supreme Court of Arkansas conceded Anderson's appeal brief was "difficult to follow," that he attempted to raise numerous claims not raised in the trial court, and he expanded on arguments for claims raised at the trial level. Docket entry no. 10-13, page 2. In any event, the failure to raise this claim on Rule 37 appeal resulted in its procedural default. This procedural default is overlooked, based on our analysis stemming from *Martinez* and *Trevino, supra.*

In order to prove ineffective assistance of counsel, petitioner must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). The petitioner bears a heavy burden

in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

Anderson argues that his attorneys should have introduced his clothes, which had no blood on them, to demonstrate he did not stab the victim 26 times, as the other testimony clearly demonstrated. The clothing would have shown that he "could be innocent," according to his Rule 37 petition. Docket entry no. 10-5, page 19. At the Rule 37 hearing, one of Anderson's attorneys, Cristi Beaumont, testified:

Q: . . . What did you find when you went to the police department and viewed the clothing of the suspect taken from him that night?

Cristi Beaumont: They were extremely bloody[2].

Q: So I assume you decided not to introduce that clothing?

Cristi Beaumont: That would be correct because it would have been harmful to our case. Docket entry no. 10-5, pages 122-123.

Anderson fails to show his attorneys were unreasonable in choosing not to introduce the clothes. It is not enough for Anderson to pronounce the clothes were without blood after the fact. The trial testimony and the Rule 37 testimony is not overcome by Anderson's assertion to the contrary. His attorneys acted reasonably and the trial judge's legal conclusion that the decision was strategic is well-supported. Therefore, he fails to satisfy the first prong of the *Strickland* test. There is no merit to this claim.

---

[2]Ms. Beaumont's recollection of the blood on the clothes is consistent with the trial testimony of Detective Paul Shepard, who collected Anderson's clothes, with  "suspected blood stains," shortly after the crime was committed.  (Tr. 874).

*Claims 5-8 – Four Additional Claims of Ineffective Assistance of Counsel:* Since these four claims were raised in state court, our consideration is governed by the provisions of 28 U.S.C. § 2254(d)(1), (2), which states a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
>        . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

Prior to examining the claims which were adjudicated in state court, it is necessary to review the state court ruling on the claims, which is contained in this excerpt from the Arkansas Supreme Court's decision denying Rule 37 relief:

> Applying this [*Strickland*] standard, under the circumstances here, appellant could not prevail on a claim of ineffective assistance that alleged prejudice concerning the sentencing phase of his trial. Appellant received the most favorable outcome possible at trial regarding punishment, in, that, after appellant had been found guilty of capital murder, he was not sentenced to the harsher of the two possible punishments. *See State v. Smith,* 368 Ark. 620, 249 S.W.3d 119 (2007) (holding that prejudice was not shown as a matter of law where appellant received less than the maximum sentence for the offense charged). So, we need not consider further any claims that appellant raised concerning the sentencing phase of the trial, regardless of whether the claim was raised below and ruled on by the trial court. . . .
>        Appellant next argues that counsel was ineffective for failing to raise and preserve for appeal an argument that the causation instruction given to the jury impermissibly shifted the burden of proof. To the extent that appellant received a ruling on this issue, the trial court was correct to conclude that appellant failed to demonstrate prejudice.
>        Appellant contends that counsel should have preserved the argument that the burden of proof shifted impermissibly because the jury instruction required him to

show that his actions were clearly insufficient to cause the victim's death. But, the instruction in question specifically stated that "the State must prove that Ricky Anderson caused a particular result," with the result being Ulmer's death. Appellant was not required by the instructions to show that his actions were clearly insufficient to cause Ulmer's death. Instead, the jury instruction provided for an affirmative defense, where the State was required to show that Ulmer's death resulted from appellant's conduct either alone or together with another cause, but, if there were multiple causes of her death, appellant could show that another cause was clearly sufficient to produce the result and that appellant's conduct was clearly insufficient by itself. Appellant identified no mandatory presumption of an element of the crime or other way in which the instruction dictated that the jury was required to find causation. [citations omitted]. . .

Finally, appellant asserts that the trial court incorrectly found that it was trial strategy for his attorneys not to have tested the knives at the crime scene for fingerprints and that counsel were not ineffective for failing to adequately investigate the issue of his competency. As already noted, counsel did engage independent evaluations of appellant's mental condition, and appellant did not demonstrate how further investigation might have provided more favorable evidence concerning his competency. One of appellant's attorneys testified in the hearing on the Rule 37.1 petition that counsel had discussed requesting testing of the knives for fingerprints,  but decided that it would be better to be able to argue that the knives had never been tested. Cristi Beaumont, one of appellant's appointed attorneys, testified that the concern was that appellant had admitted that he had touched the knives and the testing could have potentially confirmed that.

Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel.  *Mister v. State*, 2014 Ar. 446, 2014 WL 5494016.  While the decisions must be based on reasonable professional judgment, counsel is allowed great leeway in making strategic and tactical decisions.  *Stewart*, 2014 Ark. 419, 443 S.W.3d 538.

Counsel in this case articulated how the tactical decision not to test for fingerprints furthered the adopted strategy. To the extent that appellant may be asserting that counsel unreasonably failed to adopt his desired defense theory that the police inflicted the wounds postmortem, Beaumont also addressed that issue in her testimony and indicated that counsel believed that there was not sufficient evidence to present that defense without a loss of credibility.

It was appellant's burden to show that specific acts or omissions by counsel could not have been the result of reasonable professional judgment.  He did not demonstrate that the chose strategy was unreasonable or that other attorneys would have sought to have the fingerprint testing done, and he thus did not meet his burden to overcome the presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.

*Anderson v. State*, 2015 Ark. 18, 6-7.

Regarding all of these claims which were raised in state court, the pertinent statute

requires us to answer two questions: first, was the state court's decision contrary to or an

unreasonable application of clearly established Federal law; and second, was the state court decision based on an unreasonable determination of the facts in light of the evidence presented in the State court. In this instance, we find the first of the two inquiries is answered in the negative. The Supreme Court of Arkansas cited *Strickland v. Washington*, 466 U.S. 668 (1984), the preeminent case on ineffective assistance of counsel. Anderson does not suggest some other federal law controls his various arguments concerning his trial attorney's efforts, and he fails to demonstrate the Arkansas Supreme Court unreasonably applied the *Strickland* case. To the contrary, the record shows the state court followed closely the two-prong analysis set forth in *Strickland*. We find the state courts properly identified and applied the controlling federal law. The only remaining question is whether the decision in state court was unreasonable in light of the evidence adduced at trial. The Court has carefully reviewed the trial transcript in order to make this determination, and we will individually address the state court rulings and the facts presented at Anderson's trial.

Claim 5 is Anderson's allegation of ineffective assistance of counsel for objecting to the causation jury instruction for the wrong reason, and thus not preserving the argument for appeal. The Supreme Court of Arkansas squarely addressed this claim, finding no prejudice accrued to Anderson since the jury instruction was not defective. State courts are the ultimate expositors of their own state's laws, and federal courts entertaining habeas corpus petitions are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances. *Mendiola v. Estelle*, 635 F.2d 487 (5th Cir. 1981). Here, there is no reason to reject the state court's finding that the jury instruction was proper. We find the holding of the Supreme Court of Arkansas was a reasonable application of the law in light of the evidence adduced at trial. Accordingly, there is no merit to this claim.

For his sixth claim, Anderson faults his attorneys for failing to adequately investigate

12

mitigating factors and preparing[3] for the trial's penalty phase.  This claim is clearly without merit since, as noted by the Supreme Court of Arkansas, Anderson received the best possible result at the trial's penalty phase.  Having been found guilty, Anderson was eligible to receive only two sentences – death or life imprisonment.  He can point to no prejudice since he received the more lenient sentence.

Claim 7 is Anderson's assertion that his attorneys were ineffective for failing to submit for testing two knives found at the scene.  The foregoing excerpt from the Supreme Court of Arkansas reflects their finding that Anderson failed to show this decision was unreasonable.  Our careful review of the trial transcript supports this conclusion.  Anderson advanced the notion that his attorneys should have tried to show the police inflicted the stab wounds on the victim after she died.  Given the tremendous amount of eyewitness testimony, along with audio tape of the 911 call, such a strategy would have been foolish, and Anderson's attorneys acted professionally by choosing to pursue three other defense strategies described by Cristi Beaumont in her Rule 37 testimony: mental disease or defect, causation, and self-defense.  The decision not to test the knives for fingerprints was part of the strategy employed by Anderson's attorneys, and it was a reasonable decision.  As a result, the first prong of the *Strickland* test is not met.  There is no merit to the claim of ineffective assistance for failing to test knives retrieved from the crime scene.

Anderson's final allegation of ineffective assistance of counsel is that counsel was ineffective for failing to adequately investigate and prepare for the trial's guilt phase.  This is a general claim, and should be dismissed for failure to advance specific facts to support the alleged constitutional violation.  *See, e.g., Spillers v. Lockhart*, 802 F.2d 1007 (8th Cir. 1986) (vague and conclusory allegations of ineffective assistance of counsel are insufficient basis for habeas relief).

---

[3]Anderson's attorneys called nine witnesses on his behalf during the sentencing phase of the trial, and the jury found six mitigating factors supported their life imprisonment verdict.  (Tr. 1366-1473, 255-258).

Even if we assume Anderson's claim to be specific and adequate, it is without merit because the record shows his trial attorneys zealously represented him during the guilt phase of the trial.  This conclusion is supported by our review of the record and by the following findings of fact made by the trial judge in the Rule 37 proceeding:

* Anderson's attorneys filed 35 pre-trial motions;

* Anderson's attorneys conducted a thorough pretrial investigation of the facts, circumstances and crime scene;

* Anderson's attorneys communicated with him throughout the trial;

* Anderson's attorneys identified and interviewed all potential witnesses provided by Anderson as well as additional witnesses;

* Anderson's attorneys obtained all available evidence of his mental health history;

* Anderson's attorneys engaged a neuropsychologist and a neuropsychiatrist to examine him, as well as submitting him for a mental evaluation at the Arkansas State Hospital;

* Anderson's attorneys thoroughly investigated all medical evidence relating to wounds on both the victim and on Anderson;

* Anderson's attorneys thoroughly investigated the backgrounds and professional qualifications of the two police officers who responded to and witnessed the events leading to Anderson's arrest;

* Anderson's attorneys obtained and thoroughly investigated all evidence relating to the use of tasers by the police officers; and

* Anderson's attorneys adduced evidence at trial relating to the timing and execution of the search warrant.

Docket entry no. 10-5, pages 76-78.  Anderson falls far short of showing his attorneys neglected to prepare and present a defense during the guilt phase of the trial.  This claim is without merit.

In summary, the trial transcript reflects Anderson's attorneys were faced with the

14

monumental challenge of defending a man caught in the act of viciously stabbing a pregnant woman who held a protective order against him.  The strategy of arguing mental disease or defect, causation, and self defense[4] did not prevail at the guilt phase of the trial.  Anderson's attorneys are credited with vigorously offering these defenses, as well as with wisely choosing not to offer two other defenses: one, Anderson's theory that the police stabbed the victim after she died from the gunshot wound, a theory which attorney Beaumont thought would "lose all credibility with the jury if we tried to do that because we didn't think there was evidence of that"; and two, the theory that someone else was present in the apartment and killed Jill Ulmer. Officer Mark Laird testified that he assisted at the crime scene, and that Anderson volunteered that he had been shot in the shoulder, and that a second male, identified first as Dontrell Barker and later as Greg, had been in the apartment and may have been shot.  (Tr. 815-816).  Officer Nickalus White testified that he also assisted at the crime scene, where Anderson said Greg was shot twice while in the apartment before jumping out of the second story window.  (Tr. 854-855). An examination of Anderson showed he had not been shot, and a search for a second male was unsuccessful.  Anderson's attorneys are credited with choosing not to present this implausible alibi defense[5].

Anderson's attorneys were successful at the penalty phase of the trial.  This was significant, as attorney Beaumont had counseled with Anderson many times ("probably over 20 times") on the advantage of pursuing a plea bargain given "the high likelihood of him getting the death penalty."  Docket entry no. 10-5, page 119.  At sentencing, the trial judge corroborated Beaumont's assessment, informing Anderson he was "very fortunate" to avoid the death penalty,

---

[4]Anderson's attorneys presented the self defense theory via the testimony of Dr. Bob Gale, a neuropsychiatrist who interviewed Anderson.  Dr. Gale testified Anderson told him that the victim lunged at him first with a knife and he acted in self defense.  (Tr. 1175).  While the jury did not embrace this narrative, Anderson's attorneys offered this defense without calling Anderson, who had prior felony convictions, as a witness.

[5]Attorney Beaumont testified at the Rule 37 hearing that Anderson confided to his attorneys that the "Greg" story was not true.  Docket entry no. 10-5, page 116.

having committed a "horrible crime" in an "especially cruel and depraved manner." (Tr. 1514). Absent able representation, the result of the sentencing phase could have been different.

Anderson received effective assistance of counsel at both the guilt and sentencing phase of his trial.

**Conclusion:** As noted early in our opinion, claims 1 and 2 are procedurally barred due to Anderson's failure to fully raise the claims in state court, coupled with his failure to show cause and prejudice for his state court omission. Claims 3 through 8 are without merit, as Anderson fails to demonstrate any constitutional defect in his proceedings.

For the foregoing reasons, we recommend the petition for writ of habeas corpus be dismissed and the relief requested be denied because all claims are without merit.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 3rd day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE